Bertram R. Gelxand, S.
This is an application to approve the settlement of an action for wrongful death, to judicially settle the account of the administratrix and for other relief with reference to administration expenses and debts.
Decedent died on January 22, 1969 as the result of injuries sustained in an automobile accident on December 27, 1968. • At the time of his death, decedent resided with Constance Johnson and her eight children. The testimony established that he first met Constance Johnson in 1954 when he was in the military seryice. From 1954 to 1958 they lived together whenever dece *503 dent was on leave. Upon decedent’s discharge from the mili- . tary service in 1958 they set up housekeeping together and lived as husband and.wife from that time until decedent’s death. This relationship resulted in the birth of eight children who presently range in age from sixteen years to four years. Decedent and Constance Johnson were never married nor was the paternity of any of the children ever adjudicated in a filiation proceeding. Constance Johnson at all times was held out by decedent to be Ms wife. He supported the children continuously from their birth to his death. By word and act the children acknowledged that he was their father and he recognized them as Ms cMldren. Decedent’s mother accepted the cMldren as her grandcMldren and their relationsMp with her was that of a grandmother.
In tMs proceeding, it is the contention of petitioner (decedent’s mother) that pursuant to EPTL 4-1.1 (subd. [a], par. [3]) and 4-1.2 she is decedent’s sole distributee and therefore entitled to the entire net proceeds of the action for wrongful death. However, decedent’s mother is willing voluntarily to assign one tMrd of the settlement to the eight cMldren. The court appointed a guardian ad litem to protect the interests of the infant cMldren. It is the position of the guardian ad litem that the children are entitled to receive the entire proceeds Of the settlement in the sum of $20,000, wMch sum is entirely for damages for wrongful death. The action for personal injuries has been waived.
At issue here is whether illegitimate cMldren have a right to the proceeds of an action for the -wrongful death of their father. EPTL 5-4.4 provides that the distributees of a decedent as defined in EPTL 4-1.1 are eligible to share in the allocation of the proceeds of an action for wrongful death. EPTL 4-1.2 (subd. [a], par. [2]) specifically demes to illegitimate cMldren the right to be distributees of a father, unless a court of competent jurisdiction during the lifetime of the father has entered an order establishing patermty within two years after the birth of the cMld. Illegitimates are permitted to inherit from their mother and to be distributees of their mother’s estate equally with legitimate cMldren (EPTL 4-1.2, subd. [a], par. [1]).
There is no rational basis for granting an illegitimate child the right to recover for pecumary loss resulting from the death of Ms mother and denying Mm tMs right with reference to Ms father. Nor is there any acceptable rationale that would sustain illegitimates being placed in a classification wMch maintains their loss of a father is without damage wMle such loss by a cMld born in wedlock or whose patermty was established by judicial decree is compensable. The statutory provision wMch *504 attempts to implement this result is also fundamentally offensive to the underlying concept that where' an infant’s rights are at stake in a judicial proceeding the infant cannot be bound unless he is a party to the proceeding through a guardian. The provisions. of EPTL 4-1.2 (subd. [a], par. [2]) in effect impose a two-year Statute of Limitations on minors at the very inception of their lives and deny to the infants forever-significant rights based upon an act of omission of a mother who may be totally lacking in sufficient sophistication to be competent to protect the legal rights of the infants. That to the extent this prevents an illegitimate child from recovering for- the death <of his father, it is offensive to the basic due process to which an infant is constitutionally entitled is increasingly reflected in recent decisions.
The United States Supreme Court in Levy v. Louisiana (391. U. S. 68) held that an illegitimate child could not be denied the right to recover damages for th,e death of his mother. The United States Supreme Court having held that it is constitutionally offensive for a State statute to bar an illegitimate infant from recovering for the wrongful death of his mother, it follows that it is equally offensive to the equal protection classes in both the United States and New York State Constitutions to deny an infant this right with reference to his father (U. S. Const., 14th Amdt.; N. Y. Const., aft. I, § 11). On remand the Supreme Court of Louisiana (253 La. 73) so held in the Levy case (supra). The Levy decision was followed by Schmoll v. Creecy (54 N. J. 194). This was an action by a legal wife and two illegitimate children to recover for the wrongful death of the decedent. The highest court of New Jersey held that when children suffer injury by the wrongful death of a parent their legitimacy is constitutionally irrelevant to liability.
In Matter of Ortiz (60 Misc 2d 756) Surrogate Sobel, relying upon Levy v. Louisiana (supra) recognizes that to the extent EPTL 5-4.4 prohibits a child from recovering damages for the wrongful death of its father, it is unconstitutional. In Matter of Perez (69 Misc 2d 538) Surrogate MroomiCK subsequently concluded that an illegitimate child cannot be denied the right to share in damages for the wrongful death of his father. I share this conclusion and find that to the extent that the statutes involved deny children the right to participate in the distribution of the proceeds of an action for the wrongful death of their putative father, they are denying to the infants the equal protection of the law guaranteed by the respective equal protection clauses ofi both the United -States and New York State Constitutions,
*505 The fact that a statute cannot constitutionally deny an infant the right to recover damages for the wrongful death of his father does not relieve the infant of the burden of establishing by a preponderance of credible evidence that the decedent was in fact his father and that as a result of the father’s death he has sustained a pecuniary loss. That the burden of filiation is extremely difficult after many years cannot alter the result that an infant has the right to attempt to sustain this burden. In the instant case the infants have succeeded in meeting this burden. The testimony clearly establishes that decedent was the father of each of the infants and that he in all respects acknowledged them to be Ms cMldren and fully supported them from their birth to Ms death.
The court accordingly finds that after payment of the expenses hereinafter allowed from the settlement, the balance remaining should be distributed to the cMldren of decedent in accordance with the formula contained in Matter of Kaiser (198 Misc. 582). With reference to the balance of the application the compromise of the action for wrongful death for the sum of $20,000 and the discontinuance of the action for pain and suffering is approved; the claim of Robert Couser for reimbursement of funeral expenses in the sum of $408.50 is allowed; the claim of Stewart Funeral Home for $250 for funeral expenses is likewise allowed; the lien of the Department of Hospitals of the City of New York in the sum of $47 is allowed, and the fee of the attorney for the administratrix is fixed and allowed in the sum of $6,550.39, plus disbursements of $330,81.