Jones, J.
We hold that EPTL 4-1.2 (subd [a], par [2]) is not unconstitutional to the extent that it prescribes the entry during the father’s lifetime of an order of filiation declaring paternity as a condition precedent for inheritance by an illegitimate child from his or her father.
In this case an illegitimate son, over 25 years of age at the time of his father’s death, sought an order in Surrogate’s Court for a compulsory accounting by the administratrix of his deceased father’s estate. The administratrix, the decedent’s widow, moved to dismiss the son’s application on the ground that he was not a distributee and hence had no standing to compel an accounting.
The facts are undisputed. Appellant and his sister were the natural son and daughter of the decedent, having been born on August 24, 1948 and March 19, 1950, respectively. Respondent administratrix had been married to the decedent for some 34 years prior to the decedent’s death on January 7, 1973, during which time the decedent and she had resided together as husband and wife. The natural mother of appellant and his sister had died on October 11, 1968. It was not contested that during his lifetime the decedent had provided financial support for both appellant and his sister. Additionally it appeared that when appellant wished to be married in April, 1969 parental consent was required because he was then under age 21. Incident to the granting of such consent the decedent had acknowledged that appellant was his son in a writing sworn to before a notary public. It is agreed, however, that there was never any order of filiation.
The Surrogate granted respondent’s motion to dismiss the application for a compulsory accounting on the ground that appellant was not a distributee under EPTL 4-1.2 (subd [a], par [2]). In so doing the Surrogate rejected appellant’s contention that EPTL 4-1.2 (subd [a], par [2]) is unconstitutional. On direct appeal pursuant to CPLR 5601 (subd [b], par [2]) we affirm.
EPTL 4-1.2, bearing the heading, "Inheritance by or from illegitimate persons”, provides in pertinent part:
"(a) For the purposes of this article:
"(1) An illegitimate child is the legitimate child of his *80 mother so that he and his issue inherit from his mother and from his maternal kindred.
"(2) An illegitimate child is the legitimate child of his father so that he and his issue inherit from his father if a court of competent jurisdiction has, during the lifetime of the father, made an order of filiation declaring paternity in a proceeding instituted during the pregnancy of the mother or within two years from the birth of the child.
"(3) The existence of an agreement obligating the father to support the illegitimate child does not qualify such child or his issue to inherit from the father in the absence of an order of filiation made as prescribed by subparagraph (2).
"(4) A motion for relief from an order of filiation may be made only by the father, and such motion must be made within one year from the entry of such order.”
Appellant’s assault on EPTL 4-1.2 (subd [a], par [2]) is grounded in contentions that its provisions deny him the equal protection of the law assured him under State and Federal Constitutions and the due process of law to which he is entitled under the Federal Constitution. In disposing of his challenge we address three aspects of asserted constitutional infirmity: first, the difference in proof of parenthood necessary to establish the right of inheritance from a natural father as contrasted with the proof required to establish the right of inheritance from a natural mother; second, the insistence that there be an order of filiation; and third, insistence that the order of filiation be made during the lifetime of the natural father.*
At the threshold we recognize a material distinction between benefits and rights to which an illegitimate child is entitled in consequence of the fact that he or she is the child of his or her parent on the one hand, and, on the other, expectations only to which such a child may look forward in consequence of a child-parent relationship. The former category includes entitlement to the proceeds of a wrongful death *81 action (Levy v Louisiana, 391 US 68; cf. Glona v American Guar. Co., 391 US 73); to workmen’s compensation benefits (Weber v Aetna Cas. & Sur. Co., 406 US 164); to financial support from a father (Gomez v Perez, 409 US 535); to social security benefits (Jimenez v Weinberger, 417 US 628). In such cases the applicable standard for review as to constitutionality is that sometimes labeled strict scrutiny (a compelling State interest in the objective sought and the least restrictive means for achieving that objective [cf. Montgomery v Daniels, 38 NY2d 41]).
As appellant concedes, however, the test in the present instance (involving only an inchoate expectancy at best) is whether there is a rational basis for the means chosen by the Legislature for the accomplishment of a permissible State objective. (Labine v Vincent, 401 US 532; cf. Montgomery v Daniels, supra, p 61.) We have no difficulty in concluding under this less stringent test that there is a reasonable basis for each of the three distinctions which the Legislature has prescribed and which appellant attacks.
In the first place, given the state of our present knowledge in the field of genetics, it cannot be gainsaid that the identification of a natural mother is both easier and far more conclusive than the identification of a natural father. It may be one day that, notwithstanding the nonparticipating role of the father at birth, scientific tests will nonetheless be available by means of which the fact of fatherhood can be demonstrated as compellingly as is presently true with respect to the fact of motherhood. Clearly such proof is not available today. In this circumstance we conclude that the Legislature acted rationally in prescribing a specially defined procedure for establishing the fact of fatherhood. Once that fact is established in the formal manner required by the statute, the right of an illegitimate child to inherit from his father is the same as his right to inherit from his mother, and exactly the same as if he had been born in wedlock. There is no discrimination against illegitimacy. The difference exists only with respect to the means by which the fact of fatherhood is to be established, and then for sound and understandable reasons.
Secondly, we cannot say in the face of practical problems and difficulties associated with proof of fatherhood that it is irrational to require the formality of a court order adjudicating the fact of paternity. We recognize, of course, that in particular instances, a duly acknowledged written statement *82 of paternity, or conclusive proof of substantial and continuous financial support may be very compelling. But even in such instances, under familiar principles an apparent admission of paternity may be negated by proof of misrepresentation, fraud, duress or other vitiating circumstance. To require the formality and conclusiveness of a judicial determination is not irrational.
Finally, we conclude that it was not irrational, either, to lay it down as a condition precedent that the order of filiation must be made during the lifetime of the natural father. The father may be expected to have greater personal knowledge than anyone else, save possibly the mother, of the fact or likelihood that he was indeed the natural father. His availability should be a substantial factor contributing to the reliability of the fact-finding process. Beyond that, and perhaps even more important, by their very nature the statutes of descent and distribution serve as an expression of the presumed intention of the deceased for the distribution of his property on his death, absent any effective testamentary or inter vivos disposition. No one questions that a father may disinherit his son notwithstanding that the fact of fatherhood has been conclusively established in a paternity proceeding; he has only duly to execute a will appropriate for that purpose. Similarly a father may effectively provide for the distribution of all or any part of his property to an illegitimate child notwithstanding that there has been no order of filiation. Since, then, the ultimate question of whether a son shall inherit lies within the volitional determination of the father, it is not unreasonable to require in addition to a highly reliable standard of proof of parenthood, that the alleged father have personal opportunity to participate, if he chooses, in the procedure by which the fact of his fatherhood is established.
Accordingly the decree of Surrogate’s Court, Westchester County, should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Cooke concur.
Decree affirmed, with costs.

 Since this appellant’s claim to status as a distributee is foreclosed by the provision of EPTL 4-1.2 (subd [a], par [2]) that the order of filiation must be made during the lifetime of the natural father, a provision the constitutionality of which we here uphold, we do not reach the challenge addressed to the separate provision of the statute which requires that the paternity proceeding have been instituted "during the pregnancy of the mother or within two years from the birth of the child” (EPTL 4-1.2, subd [a], par [2]). We intimate no views with reference to the asserted unconstitutionality of that provision.